```
           UNITED STATES DISTRICT COURT
         FOR THE DISTRICT OF NEW HAMPSHIRE
```

Nicole Hafford

    v.                                   Civil No. 15-cv-426-PB
                                             Opinion No. 2017 DNH 060
US Social Security Administration,
Acting Commissioner, Nancy A. Berryhill


### MEMORANDUM AND ORDER

Nicole Hafford is a twenty-seven year old woman who previously worked as a cashier and a server.  Hafford challenges the Social Security Administration's denial of her claim for disability insurance benefits ("DIB").  The Acting Social Security Commissioner seeks to have the ruling affirmed.


### I.  BACKGROUND

In accordance with Local Rule 9.1, the parties have submitted a joint statement of stipulated facts (Doc. No. 11).  Because that joint statement is part of the court's record, I do not recount it here.  Instead, I discuss facts relevant to the disposition of this matter as necessary below.


### II.  STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), I have the authority to review the administrative record and the pleadings submitted by

the parties, and to enter judgment affirming, modifying, or reversing the final decision of the Commissioner. That review is limited, however, "to determining whether the [Administrative Law Judge] used the proper legal standards and found facts [based] upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000). I defer to the Administrative Law Judge's (ALJ's) findings of fact, so long as those findings are supported by substantial evidence. Id. Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

If the substantial evidence standard is met, the ALJ's factual findings are conclusive, even where the record "arguably could support a different conclusion." Id. at 770. Findings are not conclusive, however, if the ALJ derived his findings by "ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam). The ALJ is responsible for determining issues of credibility and for drawing inferences from evidence in the record. Irlanda Ortiz, 955 F.2d at 769. It is the role of the ALJ, not the court, to resolve conflicts in the evidence.

Id.

### III. ANALYSIS

Hafford applied for DIB in November 2012, claiming disability as of April 2010. The ALJ held a hearing in April 2014, at which Hafford and her brother testified. Counsel represented Hafford at the hearing. In a subsequent written decision, the ALJ found that Hafford was not disabled.

In the decision, the ALJ used the five-step sequential process outlined in 20 C.F.R. § 404.1520(a) to evaluate Hafford's claim. At the first step, the ALJ determined that Hafford had not engaged in substantial gainful employment from her alleged onset date through her date last insured. Continuing to step two, the ALJ found a number of severe impairments: degenerative disc disease, knee pain, history of seizure disorder, obesity, obstructive sleep apnea, and anxiety disorder. The ALJ concluded at step three that Hafford's impairments did not meet or constitute the medical equivalent of any listed impairments. Prior to step four, the ALJ assessed Hafford's residual functional capacity ("RFC"). Because Hafford had no past relevant work, the ALJ proceeded past step four and decided at step five that a significant number of jobs existed in the national economy that Hafford could perform. Accordingly, the ALJ found that Hafford was not disabled.

In August 2014, the Appeals Council declined to review the ALJ's decision, meaning the decision constitutes the final decision of the Commissioner.  The matter is now ripe for review.

Hafford presents two primary arguments for remand: (1) the ALJ committed error when calculating her RFC, and (2) the ALJ impermissibly employed the Medical-Vocational Guidelines at step five, instead of seeking the guidance of a vocational expert.  I find Hafford's first argument persuasive and therefore do not address the second.

**A.   RFC Argument**

A claimant's RFC is "the most [the claimant] can still do despite [her] limitations."  20 C.F.R. § 404.1545(a)(1).  On appeal, I determine whether the assigned RFC is free of legal error and supported by substantial evidence.  See Nguyen, 172 F.3d at 35.

Here, the ALJ found an RFC with both exertional and non-exertional limitations.  With respect to Hafford's exertional ability, the ALJ concluded that Hafford could "perform light work as defined in 20 CFR 404.1567(b)."[1]  Tr. at 14.  The ALJ

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  § 404.1567(b).

4

incorporated a number of other limitations into Hafford's RFC:

> [Hafford] cannot work around unprotected height or moving machinery; work cannot require her to drive; she is able to understand, recall and carry out short and simple instructions, maintain concentration and attention, maintain attendance and routine and persist to task to complete a normal eight-hour workday day and forty-hour work week without undue interruptions from psychologically based symptoms, can adapt to routine but simple changes, but would need a work environment that is somewhat socially isolated.

Tr. at 14.

In her RFC analysis, the ALJ recounted the hearing testimony and objective evidence on record. The ALJ first noted Hafford's testimony concerning a history of seizures and unrelieved back pain, and her brother's testimony as to Hafford's anxiety and inability to maintain focus. Tr. at 15. Turning to the objective evidence, the ALJ found that the "evidence provides some support to [Hafford's] allegations" but "does not support the elevated level of impairment alleged." Tr. at 15. She noted that Hafford had a "long history of epilepsy, confirmed by an April 2010" diagnostic test, but had not experienced a grand mal seizure since 2008 and had responded well to treatment in subsequent years. Tr. at 15–16. She likewise recognized Hafford's "history of severe obstructive sleep apnea." Tr. at 16. Although treatment controlled Hafford's apnea symptoms, the ALJ noted that Hafford had not complied with her apnea treatment in the past. Tr. at 16. The ALJ last observed that physical examinations had generally not

corroborated Hafford's claims of back and knee pain.  Tr. at 16.

The ALJ also discussed several medical opinions concerning Hafford's functional capacity.  Three opinions dealt primarily with Hafford's physical limitations.  David Riss, M.D., Hafford's treating physician, opined that Hafford could occasionally lift less than ten pounds and had several pronounced limitations in sitting, standing, and postural activities.  Tr. at 461-64.  The ALJ found Dr. Riss' opinion to be unpersuasive and declined to give it controlling weight.  Tr. at 17.  In contrast, the ALJ gave some weight to the opinion of Peter Loeser, M.D.  Tr. at 16.  Dr. Loeser performed a physical examination of Hafford — procured by the state agency — and concluded that Hafford's impairments would have, at most, "no significant effect on functional capacity."  Tr. at 423-24.  The ALJ last considered the opinion of reviewing, agency source Burton Nault, M.D.  Tr. at 17.  Dr. Nault determined that Hafford could perform "light work" with some postural and environmental limitations.  See Tr. at 55-56.  The ALJ afforded substantial weight to Dr. Nault's opinion, and the RFC formulated by the ALJ reflected the exertional level, and some of the limitations, identified by Dr. Nault.  Tr. at 17-18.

Two opinions dealt primarily with Hafford's mental limitations.  Cheryl Bildner, Ph.D., performed a mental examination of Hafford in March 2013 at the request of the state

6

agency. Dr. Bildner began her written evaluation by describing Hafford's presentation and medical history. Tr. at 414-15. Dr. Bildner then offered several opinions relating to Hafford's functional capacity. Hafford could "sustain appropriate interaction and communication in low stress and small-group settings," but "becomes overly anxious" in other settings. Tr. at 417. She could also "sustain attention . . . for brief periods of time." Tr. at 417. "Due to reported fatigue, lack of motivation and diminished threshold for anxiety," however, Hafford could not "sustain task completion for prolonged periods." Tr. at 417. Nor was she able to "persist at challenging tasks." Tr. at 417. Most pertinent for this case, Dr. Bildner wrote that Hafford "will become overwhelmed with chronic and persistent stress" in the workplace and "is able to maintain attendance for a part-time position." Tr. at 417. The ALJ mentioned several of Dr. Bildner's findings at step three and in determining Hafford's RFC, Tr. at 13-14, 17, but did not mention the part-time-work limitation or explicitly assign weight to Dr. Bildner's opinion.

The ALJ did assign substantial weight to the opinion of reviewing, agency source Laura Landerman, Ph.D., because her opinion was not "inconsistent with the medical evidence as a whole." Tr. at 17. Dr. Landerman ultimately concluded that Hafford could maintain full-time employment, though she

7

identified several limitations: Hafford could follow "short and simple instructions," endure "routine and simple changes," and had to have a semi-socially-isolated workstation with a supervisor who was not "overly harsh or critical." Tr. at 57–58. Dr. Landerman placed "primary weight" on Dr. Bildner's opinion. Tr. at 59. She did not, however, identify Dr. Bildner's part-time-work limitation as a point of conflict. The ALJ incorporated most of Dr. Landerman's findings into the RFC.

Hafford claims the ALJ made several errors in calculating her RFC. First, she argues that the ALJ ignored Dr. Bildner's limitation to part-time work and failed to explain why she did not include a part-time limitation in Hafford's RFC. See Doc. No. 8 at 4–5, 8; Doc. No. 13 at 3. Indeed, the ALJ found that Hafford could adequately "complete a normal eight-hour workday day and forty-hour work week." Tr. at 14. Failing to address the limitation was not harmless error, according to Hafford, because inclusion would have compelled a finding of disability. See Doc. No. 8 at 8. I find this argument persuasive and do not address her other RFC arguments.

The ALJ must assess a claimant's RFC "based on all of the relevant medical and other evidence." § 404.1545(a)(3); see also Nguyen, 172 F.3d at 35 (stating an ALJ may not ignore evidence). Specifically, the ALJ must evaluate every medical opinion in the case record and "explain in the decision the

8

weight given to the opinions of . . . treating sources, nontreating sources, and other nonexamining sources." § 404.1527(c), (e)(2)(ii) (2016) (since amended). The need to address opinion evidence is most pronounced where the evidence conflicts with the ALJ's determination. Accordingly, "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8P, 1996 WL 374184, at *7 (July 2, 1996). In sum, "[a]lthough an ALJ is free to independently evaluate the weight of a particular medical opinion in the record that supports a claimant's position, an ALJ is not free to simply ignore it." Grenier v. Colvin, 2015 DNH 133, 6.

In this case, ALJ was required to address Dr. Bildner's opinion that Hafford "is able to maintain attendance for a part-time position." Tr. at 417. The ALJ's failure to do so constitutes reversible error. The limitation plainly conflicts with the RFC found by the ALJ, and if the limitation were incorporated into the RFC, it would produce a finding of disability in this case. See Huse v. Colvin, 2014 DNH 059, 4; Mitchell v. Astrue, 2012 DNH 054, 15-16. Moreover, the limitation was not conclusory, but expressed in the context of Hafford's related impairments. Dr. Bildner found that Hafford was "unable to sustain task completion for prolonged periods of time" due to her reported symptoms, and could not "persist at

9

challenging tasks." Tr. at 417. And even though Hafford could "tolerate minor stressors in" the workplace, she would "become overwhelmed with chronic and persistent stress." Tr. at 417.

Although the ALJ identified and discussed parts of Dr. Bildner's opinion at step three and in formulating the RFC, the ALJ did not mention the part-time-work limitation and did not provide an explanation for excluding that limitation from the RFC. Tr. at 13-14, 17. Nor did the ALJ explicitly note the weight given to Dr. Bildner's opinion. Importantly, Dr. Bildner's limitation was not cumulative of other evidence in the record that the ALJ did address.[2] See Lord v. Apfel, 114 F.Supp.2d 3, 13 (D.N.H. 2000). Thus, remand is appropriate. See Charron v. Astrue, 2013 DNH 156, 13-14, 17; Morse v. US Soc. Sec. Admin., Com'r, No. 12-CV-446-PB, 2013 WL 5776148, at *8 (D.N.H. Oct. 25, 2013).

The Acting Commissioner advances several arguments to save the ALJ's decision. None is persuasive. First, the Acting Commissioner contends that "Dr. Bildner never said that [Hafford] was only limited to part-time work." Doc. No. 10-1 at 6. The statement could merely have been a reference to Hafford's history of part-time work. The Acting Commissioner

---

[2] The ALJ noted that Hafford's brother "opined that [Hafford] could not complete a forty hour work week." Tr. at 15. The opinions of a claimant's family member and a mental health specialist are sufficiently distinct that mention of the former does not excuse failing to address the latter.

10

goes on to argue that Dr. Landerman's reviewing opinion supports this interpretation of Dr. Bildner's opinion. Id. Dr. Landerman gave "primary weight" to Dr. Bildner's opinion, but did not identify the part-time statement as a conflicting limitation. See id.

This argument fails. To start, a statement of limited ability in this context is generally exclusive of more robust abilities. More fundamentally, it is the responsibility of the ALJ to resolve conflicts in the evidence. Irlanda Ortiz, 955 F.2d at 769. Where a medical source opinion can be reasonably read to include the kind of limitation involved here, the ALJ is obliged to explain the meaning of the opinion or address it as a limitation. Otherwise, a court would not be able to review the reasoning or evidence underlying the ALJ's decision. Cf. Dube v. Astrue, 781 F. Supp. 2d 27, 35 (D.N.H. 2011).

The Acting Commissioner next argues that the ALJ did not need to expressly evaluate Dr. Bildner's opinion because Dr. Landerman relied on, and adequately evaluated, Dr. Bildner's opinion. See Doc. No. 10-1 at 7. I reject this argument because it is based on a mistaken premise. See Grenier, 2015 DNH 133, 9-11 (rejecting a similar argument). Although Dr. Landerman gave "primary weight" to Dr. Bildner's opinion, she did not identify or discuss her part-time-work limitation. Tr. at 59. Because Dr. Landerman did not explicitly recognize the

11

tension between her opinion and Dr. Bildner's, let alone resolve that tension on the record, I cannot conclude that Dr. Landerman discharged the ALJ's duty to resolve conflicts in the evidence. If anything, placing weight on Dr. Bildner's opinion under these circumstances "only accentuated the need" for the ALJ to address the part-time-work limitation. Grenier, 2015 DNH 133, 10 n.2.[3]

Last, the Acting Commissioner maintains that the ALJ's failure to evaluate Dr. Bildner's opinion amounts only to harmless error. See Doc. No. 10-1 at 8. I disagree. Dr. Bildner was one of only two mental health specialists cited by the ALJ, and adoption of Dr. Bildner's part-time-work limitation would have required a finding of disability. See Taylor v. Astrue, 899 F. Supp. 2d 83, 90 (D. Mass. 2012). In this case, it remained the ALJ's obligation to explicitly address the conflict in the evidence.[4]

---

[3] The Acting Commissioner cites a number of cases in support of her argument. See Doc. No. 10-1 at 7-8. These cases do not compel a different result. Cf., e.g., Martel v. U.S. Soc. Sec. Admin., Com'r, 2013 DNH 157, 22-23, 28-29 (finding no error where ALJ explicitly and supportably discounted opinions containing disputed limitation).

[4] Although I do not address the ALJ's reliance on the Medical-Vocational Guidelines at step five, I repeat the First Circuit's guidance "that an ALJ typically should err on the side of taking vocational evidence when [a nonexertional] limitation is present in order to avoid needless agency rehearings." Ortiz v. Sec'y of Health & Human Servs., 890 F.2d 520, 528 (1st Cir. 1989) (per curiam).

## IV. CONCLUSION

I grant Hafford's motion to reverse the Commissioner's decision (Doc. No. 8) and deny the Acting Commissioner's motion to affirm her decision (Doc. No. 10). Pursuant to sentence four of 42 U.S.C. § 405(g), I remand the case to the Social Security Administration for further proceedings consistent with this decision.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

March 27, 2017

cc: Penelope E. Gronbeck, Esq.
    Robert J. Rabuck, Esq.